**E-FILED**
Tuesday, 07 July, 2009  01:39:31 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| RONDA NULL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-CV-1065 |
| | ) | |
| PAM GARDNER, Circuit Clerk of | ) | |
| Tazewell County, Illinois, in her | ) | |
| individual and official capacities, and | ) | |
| TAZEWELL COUNTY, ILLINOIS, an | ) | |
| Illinois Local Governmental Entity, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff alleges that Defendant fired her from her position as a deputy clerk because of her intimate relationship with a man of whom Defendant did not approve, and in retaliation for Plaintiff's "whistleblowing" of Defendant's harassment about that relationship.  Defendant Gardner (Circuit Court Clerk of Tazewell County) and Tazewell County have moved separately to dismiss under Fed. R. Civ. P. 12(b)(6).  For the reasons below, the Court recommends that the motions be denied.  However, the

Court also recommends that supplemental jurisdiction be declined over

Plaintiff's state law claim based on the Illinois Whistleblower Act.

## Standard

To state a claim under federal notice pleading standards, all the

Complaint must do is set forth a "short and plain statement of the claim

showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

Factual allegations are accepted as true and need only give "'fair notice of

what the . . . claim is and the grounds upon which it rests.'" EEOC v.

Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting*

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation

omitted).  The factual "allegations must plausibly suggest that the plaintiff

has a right to relief, raising that possibility above a 'speculative level' . . . ."

Id., *quoting* Bell Atlantic, 127 S.Ct. at 1965, 1973 n. 14. "Although this does

'not require heightened fact pleading of specifics,' it does require the

complaint to contain 'enough facts to state a claim to relief that is plausible

on its face.'" Killingsworth v. HSBC Bank Nevada, 507 F.3d 614, 618

(7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1974.

"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), *citing* Twombly, 127 S.Ct. 1955.  Legal conclusions, unsupported by alleged underlying facts, are not entitled to "the assumption of truth."  Id. at 1951.

### Allegations

Plaintiff worked as a deputy clerk for the Circuit Court of Tazewell County for more than 29 years.  In January 2007, Plaintiff entered into an intimate relationship with a man named Gordan McCann.  Defendant Gardner, the Circuit Court Clerk of Tazewell County, did not approve of the relationship, why it is not clear.

Also for reasons unclear, on February 20, 2008, Gardner ordered that Plaintiff be removed from the courtroom in which she was working.  Plaintiff's supervisor, Jo Hinkle, accompanied Plaintiff to the courtroom, where Plaintiff gathered her things, including notes that Plaintiff had taken on how to schedule court appearances.  Hinkle told Plaintiff that she could not keep the notes, but Plaintiff refused to turn them over.

That day (February 20, 2008), Gardner met with Plaintiff, Plaintiff's union representative, and Hinkle.  Gardner informed Plaintiff that she was

concerned about Plaintiff's relationship with McCann.   Gardner said that she had run a background check on McCann, but refused to disclose it. Gardner admonished Plaintiff that "You are the people you associate with." Gardner told Plaintiff that Judge Kouri had ordered the Plaintiff's keycard deactivated because of "trust and concern issues."  Plaintiff therefore had to report to work through security at the front door, where she was searched.  Additionally, Gardner told Plaintiff that Plaintiff was not concentrating on her job, though Judge Barra had no complaints about Plaintiff's performance.

On February 25, 2008, Gardner again met with Plaintiff, telling her it was "in [her] best interests to look into Gordon McCann."  Gardner asked if Plaintiff had met McCann at the courthouse; Plaintiff did not respond. Gardner then said that she would deny ever having the conversation. Gardner also gave Plaintiff an oral reprimand for taking Plaintiff's personal notes from the courtroom (the February 20, 2008 incident).

On March 7, 2008, Gordon McCann visited the clerk's office and asked who had run the background check on him.  Gardner refused to give him a copy of the background check, but told McCann that the information was on a Logan County website.  "Gardner stated McCann had over 40

cases on him in Logan County, Illinois."  (Complaint ¶ 12(B)).  McCann did have "a number of disputes with the City of Lincoln, including traffic tickets." Id.  However, he has never been charged with nor convicted of a felony.

Later that day (March 7, 2008), Gardner gave Plaintiff a note with the Logan website address, to relay to McCann.  Plaintiff objected to Gardner's background check and her discussion of it with other employees.  Plaintiff then said that she was going to call a deputy sheriff and did so.  Plaintiff also told Gardner that she considered Gardner's behavior harassment and asked that it stop.  When Deputy Johnson arrived in response to Plaintiff's call, Plaintiff told him "about Gardner's conduct with the note, but did not go into the other details."  (Complaint ¶ 13(D)).  Johnson expressed doubts that the conduct described was harassment, but recommended that Plaintiff talk to the State's Attorney to confirm.  When Plaintiff returned to her desk, Gardner tore up the note with the website address and disposed of it.

Three days later, on March 10, 2008, Gardner and Hinkle met with Plaintiff and her union representative.  Gardner told Plaintiff that she would be fired for the incident on March 7, 2008, for insubordination.  Plaintiff refused Gardner's offer to voluntarily resign and instead reported to work

the next day.  Gardner directed Plaintiff to leave and not return until her union representative was present for a meeting.  That day, Plaintiff obtained a complaint form from the State's Attorney, but she did not complete the form because she was waiting for the preparation of a police report.[1]

On March 12, 2008, a meeting was held with Plaintiff and her union representative.  Gardner recited several reasons for Plaintiff's termination, all of which were false or pretextual.  Gardner's employment was terminated that day.

In February 2009, Plaintiff filed this case against Gardner, in her individual capacity and official capacity as circuit court clerk, and against Tazewell County, as a necessary party under Fed. R. Civ. P. 19, for purposes of paying any judgment or settlement against Gardner.

## Analysis

## I. Constitutional Right to Intimate Relations

Plaintiff pursues a federal constitutional claim that Gardner deprived Plaintiff of her "liberty interest in associating with a person of her choosing to engage in an intimate relationship free from interference by state actors

---

[1]It is not clear if Plaintiff actually completed the steps to obtain a police report, but that is not important to this Report and Recommendation.

guaranteed by the substantive component of the due process of law guaranteed by the Fourteenth Amendment."  (Complaint ¶ 22).

Plaintiff's constitutional right to engage in an intimate relationship with McCann free of government interference is analyzed as a liberty interest under the due process clause.  Christensen v. County of Boone, 483 F.3d 454 (7th Cir. 2007).  Defendants do not assert that Plaintiff has no such right, so the Court assumes for purposes of this Recommendation that Plaintiff does have a constitutional liberty interest in maintaining an intimate relationship with McCann.  *See id.* at 464 (interest in long term intimate relationship was "form of intimate association protected by the Constitution.").  The question, then, is whether Defendant interfered "'directly'" and "'substantially'" with that right.  Id. at 462, *quoting* Zablocki v. Redhail, 434 U.S. 374, 387 (1978).[2]  Only interference that is "arbitrary or conscience shocking, in a constitutional sense'" violates substantive due process.  "Official conduct that represents an abuse of office (as opposed

---

[2]Defendant asserts that Zablocki's "two-part inquiry" applies: "if the challenged policy imposes a direct and substantial burden on an intimate relationship, it is subject to strict scrutiny; if the policy does not impose a direct and substantial burden, it is subject only to rational basis review."  Montgomery v. Stefaniak, 410 F.3d 933, 938 (7th Cir. 2005).  Plaintiff, however, is not challenging a blanket policy/regulation, but instead Gardner's abuse of her power by interfering in Plaintiff's intimate relationship.  The latter kind of interference is analyzed under the "shocks the conscience" standard, not strict scrutiny vs. rational basis review.  Christenson, 483 F.3d 462 n.2 and 465.

to, say, the implementation of a statutory duty) violates the substantive component of the due process clause only if it 'shocks the conscience.' " Christensen, 483 F.3d at 464, *quoting* Russ v. Watts, 414 F.3d 783, 789 (7th Cir.2005) (other internal quote omitted).

Defendants argue that Plaintiff was not restricted from having a relationship with McCann.  Defendant Gardner, however, allegedly fired Plaintiff because Plaintiff refused to terminate her relationship with McCann.  Conditioning employment on terminating an intimate relationship appears to be akin to direct and substantial interference in the relationship, at least at the notice pleading stage.[3]  Whether that interference was "conscience shocking" deserves a more developed record.

Defendants cite Montgomery v. Stefaniak, 410 F.3d 933, (7th Cir. 2005), but the purported "interference" in that case was a rule that prohibited probation officers from buying anything from a business that employed a probationer.  The plaintiff in Montgomery wanted to buy a car for her fiancé from a dealership that employed a probationer.  She argued that the rule interfered with her relationship with her fiancé, because it prevented her from buying a car for her fiancé from the dealership of her

---

[3]Other reasons were given for Plaintiff's termination, but Plaintiff alleges these were all pretextual.

choice.  The Seventh Circuit agreed that the rule was, at most, inconvenient for the plaintiff and did not affect her ability to have a relationship with her fiancé in any substantial way.  The Court then upheld the rule as rationally related to a legitimate government interest.  410 F.3d at 938.

In contrast to <u>Montgomery</u>, here Plaintiff was fired not because she violated a neutral office rule that had no direct impact on intimate relationships.  Here, Plaintiff was fired directly because of her relationship with McCann.

<u>Flaskamp v. Dearborn Public Schools</u>, 385 F.3d 935 (6th Cir. 2004), a Sixth Circuit case cited by Defendants, is more analogous than <u>Montgomery</u>.  In <u>Flaskamp</u>, a school board denied tenure to a teacher who had an intimate relationship with a student months after the student graduated.  The Sixth Circuit held that the school board's decision was rationally related to the school's legitimate interests.  <u>Flaskamp</u>, though, was decided at summary judgment, not a motion to dismiss.  The Court is accordingly not persuaded that Plaintiff, at the notice pleading stage, fails to state a substantive due process claim.

Defendants also argue that Plaintiff must allege a "custom or policy" in order to proceed on this claim.  They assert that  ". . . a policy or custom must be in place for liability purposes pursuant to Section 1983 for a violation of Plaintiff's freedom of intimate association."  (d/e 8, p. 10).  The "custom or policy" analysis applies when a plaintiff seeks to hold a local government entity liable for constitutional deprivations.  *See*, *e.g.*, Armstrong v. Squadrito, 152 F.3d 564, 577 (7th Cir. 1998).  Here, though, Plaintiff is suing Gardner in her *individual* capacity for damages under 42 U.S.C. § 1983, not for an alleged unconstitutional policy.  A government employee can be sued in her individual capacity for her own constitutional violations, whether or not those violations reflect a policy or custom, and regardless of that employee's title.  Christensen  is an example of such a case.  In Christensen, the defendant allegedly abused his position as deputy sheriff, acting "disreputably and shamefully" by harassing and intimidating another police officer and his girlfriend, including trailing them and watching them from his squad car.  483 F.3d at 465.  There was no "policy or custom" in Christensen, just a rogue deputy.  The Seventh Circuit agreed that the plaintiff had a liberty interest in his relationship with his girlfriend, 483 F.3d 463, and that an action would lie if the deputy had

interfered "directly" and "substantially" in that relationship and the conduct shocked the conscience.  Id.  Christensen was dismissed not because there were no allegations of an unconstitutional policy or custom, but because the rogue deputy's interference had not been substantial enough to interfere with the plaintiff's constitutional liberty interest.  The lack of an alleged custom or policy does not doom Plaintiff's constitutional claim against Gardner in her individual capacity.

Plaintiff does also sue Gardner in her official capacity, but that is for purposes of injunctive relief—reinstatement.   Gardner's presence in the case in her official capacity for injunctive relief does not require Plaintiff to plead an unconstitutional policy or custom.

## II.    County as Necessary Party

The County argues that it is not a necessary party because the circuit court clerk's office is not a "local public entity," and therefore the County is not required to pay a judgment or settlement against Gardner under 745 ILCS 10/9-102.

745 ILCS 10/9-102 directs a "local public entity . . . to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable in the

manner provided in this Article. . . ."  A "[local public entity] does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State."  745 ILCS 10/1-206. The County maintains that the county circuit clerk is an office of the State, not the County.

Plaintiff agrees that Gardner "as Circuit Clerk of Tazewell County is an independent non-judicial officer of the State of Illinois."  (d/e 12, p.3). Plaintiff maintains that the County is still required to pay a judgment against the circuit court clerk, just as counties are required to pay judgments against county sheriffs.

In Carver v. Sheriff of LaSalle County, 203 Ill.2d 497 (2003), the Illinois Supreme Court held, in response to the Seventh Circuit's certified question:

> under Illinois law a sheriff, in his or her official capacity, has the authority to settle and compromise claims brought against the sheriff's office. Because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity.

203 Ill.2d at 499.   The Illinois Supreme Court found that the a county sheriff, in his or her official capacity, was a "local governmental body" under 745 ILCS 10/1-206, and therefore a "local public entity" under that section.

203 Ill.2d at 512.  This was because the sheriff is "an independently elected county official, who performs functions that are essential to the operation of government, and whose office is funded by public funds." Id. at 514-515. The Illinois Supreme Court then concluded that the sheriff, in his or her official capacity, had the authority as a local public entity to settle claims under 745 ILCS 10/9-102.  Lastly, the Illinois Supreme Court concluded that the county had to pay that settlement, since the county was responsible for financing the sheriff's office.  Id. at 516.  That the county was not the sheriff's employer did not relieve the county of its duty to pay the settlement against the sheriff.  See Carver, 203 Ill.2d at 499.

In response to the Illinois Supreme Court's answer, the Seventh Circuit thanked the Supreme Court of Illinois

> for resolving this knotty and recurring question of state law. Its answer implies an additional point of federal law: that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity. See Fed.R.Civ.P. 17, 19. Because state law requires the county to pay, federal law deems it an indispensable party to the litigation. . . But in the future counties must be named as parties and are entitled to remain in the suit, so that they may veto improvident settlements proposed (at their expense) by the independently elected officers.

Carver v. Sheriff of LaSalle County, Illinois, 324 F.3d 947, 948 (7th

Cir.2003).

Carver is not identical to this situation because the circuit court clerk

is not a "county official" under the Illinois Constitution.  The Illinois Supreme

Court in Carver relied on Article VII, § 4 (Local Government/County

Officers), which creates the sheriff's office (among others).  203 Ill.2d at

512.  The office of circuit court clerk is not created by Article VII, but

instead by Article VI, § 18(b) (Judiciary/Clerk of Courts), which designates

the clerks as nonjudicial officers of the circuit courts.  The Illinois Supreme

Court has held that circuit court clerks are "not county officials, but are

nonjudicial members of the judicial branch of State government.  Drury v.

County of McLean, 89 Ill.2d 417, 421 (1982).  In Drury, criminal defendants

sought to hold the county liable for the circuit court clerk's erroneous

distribution of funds to the wrong recipients.  The Illinois Supreme Court

acknowledged that counties were statutorily required to "pay the salaries

and expenses of circuit court clerks [but that] does not make the office of

circuit court clerk a county office."  It is further undisputed that circuit court

clerks and their deputies are not employees of the county.  *See* Orenic v.

Illinois State Labor Relations Bd., 127 Ill.2d 453, 480 (1989)(circuit court

nonjudicial employees were employees of State for labor relations purposes, even though county set and paid salaries).

The categorization of circuit court clerks as State employees, however, does not necessarily mean that the county is not a necessary party.  Although circuit court clerks are officers of the judicial branch of state government, "responsibility for maintaining the clerks' office belongs to the counties, not the state."  Pucinski v. County of Cook, 192 Ill.2d 540, 545 (2000).  County boards are statutorily required to provide the equipments and space, and to pay the clerks' salaries, "stationery, fuel and other expenses."  Id., *citing* 705 ILCS 105/27.3.  And, the Illinois Court of Claims has held that, despite Drury, "payment of the liabilities of circuit court clerks are, by statute (as expenses), the responsibility of the respective counties, notwithstanding the clerks status as nonjudicial officer[s] of the judicial branch of State government . . . ."  Ziegler v. State of Illinois, 55 Ill.Ct.Cl. 405 (2002)(dismissing claims against circuit court clerk for damages arising out of wrongful discharge because "a suit in this court seeking redress from the State treasury for such claimed liabilities either does not lie at all or may not be pursued here until the Claimant has

fully exhausted his or her alternative source of recovery from the appropriate county . . .").

Neither the parties nor the Court's own research has uncovered a case exactly on point. It seems clear enough that Gardner, in her official capacity as Circuit Court Clerk, is not a "local public entity" within the meaning of 745 ILCS 10/1-206, because her office is considered part of the State branch of government. That does not necessarily mean that the County has no duty under Illinois law to pay a judgment against Gardner. The overriding question is not whether the circuit court clerk is a local public entity, but whether the county must pay a judgment against the circuit court clerk. The County does not specifically address whether its funding responsibilities require it to pay a judgment against Gardner in her official capacity.

On this record, the Court concludes that Tazewell County should remain in the case as a necessary party. The Illinois Supreme Court in Carver relied on the county's statutory duty to fund the sheriff to conclude that the county had the duty to pay settlements and judgments against that the sheriff's office. 203 Ill.2d at 518. Similarly, in Robinson v. Sappington, 351 F.3d 317, 339 (7th Cir. 2003), the Seventh Circuit found that the county

was necessary party in a Title VII claim against a circuit court because "[t]he responsibility for maintaining and funding the Macon County Circuit Court lies with Macon County. Under Illinois law, it is responsible for the payment of expenses and judgments emanating from the workings of that court. The fact that some of the parties involved are state officials, as opposed to employees of Macon County, does not alter that fiscal responsibility."

Like Carver, the county has a duty to fund the office of circuit court clerk.  Also like Carver, there is the potential for a "'huckster's shell game'" if the county has no duty to pay judgments against the circuit court clerk's office: that is, "'the power has been divided in such a fashion that the responsible person can't pay, and the entity that can pay isn't responsible for doing so.'" Carver, 203 Ill.2d at 517, *quoting* Carver, 243 F.3d at 386. The County has not explained why it would not be liable to pay judgments against the circuit court clerk if it is responsible for paying the expenses of that office.  The Court accordingly concludes that Tazewell County is a necessary party to the extent Gardner is sued in her official capacity and a judgment or settlement is entered against her in her official capacity.

There is another problem that the parties do not address, though.  As discussed below, the Court is recommending that supplemental jurisdiction over the Illinois Whistleblower claim be declined.  That leaves only the constitutional claim, for which Plaintiff concedes that injunctive relief is available against Gardner in her official capacity only, because of Eleventh Amendment sovereign immunity.  The damages sought on the constitutional claim are against Gardner in her *individual* capacity, not her official capacity.  It is not clear whether Tazewell County is a necessary party for the constitutional claim for damages against Gardner in her *individual* capacity.  *See* Askew v. Sheriff of Cook County, Ill., --- F.3d ----, 2009 WL 1361913 (7th Cir. 2009)(county not necessary party in suit against jail guard in individual capacity, even though guard may later seek payment from sheriff's office under 10/9-102).  However, none of the parties has addressed this question, and it is conceivable that the County could be a necessary party even for the injunctive relief sought, since the County will have to pay Plaintiff's salary if she is reinstated.

## III.   Illinois Whistleblower Act

Plaintiff pursues a state claim under the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*  She alleges that her termination was in retaliation

for her report of Gardner's harassment to the deputy sheriff and her

attempted report to the State's Attorney.

The Illinois Whistleblower Act prohibits an employer from "retaliat[ing]

against an employee for disclosing information to a government or law

enforcement agency, where the employee has reasonable cause to believe

that the information discloses a violation of a State or federal law, rule, or

regulation."  740 ILCS § 174/15.  Employees may file civil actions for "all

relief necessary to make the employee whole," including damages, back

pay, reinstatement and attorney's fees and costs.  740 ILCS § 174/30.

In January 2008, the definition of "employer" in the Whistleblower Act

was expanded to include state and local governments:

> "Employer" means: an individual, sole proprietorship,
> partnership, firm, corporation, association, and any other entity
> that has one or more employees in this State, including a
> political subdivision of the State, a unit of local government; a
> school district . . . ; any authority including a department,
> division, bureau, board, commission, or other agency of these
> entities; and any person acting within the scope of his or her
> authority express or implied on behalf of those entities in
> dealing with its employees.

740 ILCS § 174/5, *amended by* P.A. 95-128, eff. Jan. 1, 2008 (Before the

amendment, the definition of employer specifically did "not include any

governmental entity.")(historical note to 740 ILCS § 174/5).

Gardner argues that she cannot be sued in her individual capacity on the whistleblower claim because it is the office of the circuit court clerk, not her individually, which employs Plaintiff.  There appears to be little case law, but a Northern District case cited by Defendants supports the argument.  See Averett v. Chicago Patrolmen's Federal Credit Union, 2007 WL 952034 *5 (N.D.Ill. 2007)(Illinois Whistleblower Act did not provide action against individuals, where plaintiff was employed by CPFCU, not individuals)(not reported in F.Supp.2d).  The plain language of the statute defines the term employer to include an individual who "has one or more employees in this State."  Gardner individually has no employees; the office of the circuit court clerk does.  Further, a plaintiff can sue for backpay and reinstatement, relief which only the employing entity can give, not an individual.  However, the statute also includes "any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees."  The parties do not address what this might mean.

There is, then, the question whether Gardner can be sued individually under the Illinois Whistleblower Act.  There is also the question of sovereign immunity.  Gardner asserts that Eleventh Amendment immunity

shields her from the whistleblower claim against her in her official capacity. "[S]tate immunity rules apply to [Plaintiff's] state law claims in federal court." Richman v. Sheahan, 270 F.3d 430 (7th Cir. 2001).  The State of Illinois cannot "be made a defendant or party in any court" except as allowed in the Illinois Court of Claims Act and other exceptions not relevant here.  745 ILCS 5/1.  The Illinois Court of Claims has "exclusive jurisdiction to hear and determine . . . (a) All claims against the State founded upon any law of the State of Illinois . . . ."  705 ILCS 505/8.

"The determination of whether a state law claim is being brought against the state depends on the 'issues raised' and the 'relief sought,' rather than on the formal designation of the parties."  Van Guilder v. Glasgow, 588 F.Supp.2d 876 (N.D. Ill. 2008), *quoting* Fritz v. Johnston, 209 Ill.2d 302 (2004).  "An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability."  Fritz, 209 Ill.2d at 310, *quoting* Currie v. Lao, 148 Ill.2d 151, 158 (1992).

Even if Plaintiff can pursue damages against Gardner individually on the whistleblower claim, the State of Illinois is still implicated because

Plaintiff seeks reinstatement (which Gardner could only give in her official capacity as Circuit Court Clerk), in addition to compensatory damages against Gardner in both her individual and official capacities.  Thus, it appears to the court that the whistleblower claim is arguably a claim against the State of Illinois.  Plaintiff disagrees, arguing that the county will pay the judgment, but injunctive relief such as reinstatement would necessarily control the actions of the circuit court clerk, a state office. Plaintiff also argues that her claim is not against the State because Gardner acted unconstitutionally, or illegally.  Yet, Fritz v. Johnston, 209 Ill.2d 302 (2004), cited by Plaintiff, involved an action against state employees for conspiring to force out the Deputy Director of Veterans Affairs.  The state employees had violated criminal law and had also breached duties owed to the plaintiff outside of work.  Neither circumstance is evident here.

    If the whistleblower claim is against the State of Illinois, another question arises.  Which court, if any, has jurisdiction?  The Illinois Court of Claims would arguably have exclusive jurisdiction, since it has exclusive jurisdiction over claims against the State.  The Illinois Court of Claims, however, would probably not agree, on the grounds that the County, not

the State, must pay the judgment.   Ziegler v. State of Illinois, 55 Ill.Ct.Cl. 405 (2002)(dismissing claims against circuit court clerk for damages arising out of wrongful discharge because "a suit in this court seeking redress from the State treasury for such claimed liabilities either does not lie at all or may not be pursued here until the Claimant has fully exhausted his or her alternative source of recovery from the appropriate county . . .").  The amended version of the whistleblower statute gives no guidance, and, as far as the court can tell, no amendments have been made to the State's immunity from suit under 745 ILCS 5/1, nor to the Illinois Court of Claims' jurisdiction to clarify the question.  None of the parties address this question, and the Court had found no cases addressing it.

Supplemental jurisdiction may be declined over a claim that "raises a novel or complex issue of law."  28 U.S.C. § 1367.  The Court believes that the issues discussed above are novel, complex, and better resolved by Illinois courts.  The Court therefore recommends that supplemental jurisdiction be declined over the Illinois whistleblower claim.  Accordingly, the Court does not address Defendants' other arguments for dismissal of this claim.

WHEREFORE, the Court RECOMMENDS that Defendants' Motions to Dismiss be DENIED (d/e's 4, 7).  The Court FURTHER RECOMMENDS that supplemental jurisdiction be declined over Plaintiff's state law claim under the Illinois Whistleblower Act.  The Court accordingly recommends that the state claim be dismissed without prejudice.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:    July 7, 2009

*s/ Byron G. Cudmore*

_____

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE